on behalf of the appellant Thomas G. Giussiani on behalf of the Pele Cross Accountant, Mr. Brian B. Sullivan. Mr. Giussiani, you may proceed. Thank you, Your Honor. May it please the Court, Thomas G. Giussiani on behalf of the McHenry County Conservation District, which is the appellant and cross appellee in this case. Your Honor, in July of 2010, the district was surprised, shocked, by being served with a lawsuit that requested over $400,000 from it. This lawsuit came to the district like a missile from outer space. We know the facts of the case, so tell us, then, how is it, and what were the facts and the circumstances in that money, in that those monies were not removed from his paycheck? Well, there were five instances in which this happened over a six-year period. The district had, during that time period, three different payroll processors that handled this, outside vendors that, ADP and others, Ceridian, which handled this for the district. The district had provided the information to these processors, who programmed it into their system, and then on an annual, on a regular basis for each paycheck, additional adjustments were made, where if somebody had some reimbursement for car expenses or had an additional reimbursement for something that they were entitled to, or an additional deduction, the district would provide additional information. But the basic information, and in the situation of Jeffrey Murray, the amount of $217.38 was programmed into the system to be deducted from every one of his paychecks. But if they had audited, counsel, wouldn't they have found this? Even though this was spread out over a number of years, didn't the district have a duty to audit? Well, not under the withholding statute, based on what it requires for the assessment of penalties. We can say it had a duty to audit. We can say that it might have been a prudent practice to audit. You might even be able to say that it was negligent not to audit, and I would dispute that. I would argue that it wasn't. I think if this was a negligence case, I don't think the plaintiff could have sustained their burden of proof. But the issue in this case is, did it meet the standard of a knowing failure to pay? And that's a high standard that the statute imposes, and it should be a high standard, because this is a devastating penalty that could be put in place. The interesting thing about this case is that no one knew anything about these non-payments, not the district's employees, not their executive director, not Jeffrey Murray, who claims at least that he didn't know about it, and not even the plaintiff. Even the plaintiff, who was the recipient of the child support payments, didn't even know. So this is something that just, to answer Justice Shostak's question, this is something that just fell through the cracks based on some glitch in the system. Was it typically, and I think I remember reading that it oftentimes happened when there were three pay periods in a month versus two pay periods in a month? Every non-payment occurred when there was three pay periods, so it happened on the third pay period. But it didn't always happen when there was a third pay period, because there were multiple instances over that six-year period where there were three pay periods. Pay periods take place several times during the course of the year, in which there'll be three in a month. There were many instances in which that third pay period, the deduction occurred exactly the way it was supposed to. So this was a randomly occurring glitch. It was something that went wrong in the system. We don't know what it is. But the important point, in our view, is that the district never knew about this. Well, how does that impact what liability the district had? Well, a knowing failure to pay is an essential element of this lawsuit, of this type of claim, the assessment of a statutory penalty. It has to be knowing, not strict liability. Our position is that what the district court did is the district court reduced the burden of, I mean the circuit court, reduced the burden of proof in this case to, if the district knew it had the obligation to withhold, that satisfied the knowing requirement. And then the failure to pay, they applied a strict liability standard to it. That all the plaintiff had to do was prove that we knew we had an obligation to withhold. Well, we don't dispute we knew we had an obligation to withhold. We withheld for six years, except for five times. Over 160 paychecks. Courts seem to rely on the presumption pretty heavily. Well, the presumption was argued vigorously in the circuit court. And we say the presumption does not apply in this instance. And I believe that we have set forth in our brief compelling arguments for why the presumption does not apply in this case. And I think that if you look at statutory interpretation, which has to focus on the language, the language is absolutely clear that the presumption applies only when the employer withholds and doesn't pay. Not when the employer doesn't withhold and doesn't pay. And there's many reasons under legal principles why that would be a logical distinction that the court, that the General Assembly would have imposed in this case. It's consistent with the holding in Thomas v. Deenan. It absolutely is. It absolutely is. The statute specifically says you are liable whether you withhold or if you don't pay, whether you withhold or not. And then the statute says the presumption only applies when you withhold and don't pay. I would submit to the court that that statutory language is so clear. And because the use of presumptions is very carefully defined in our case law as to when presumptions are appropriate and when they're not, that the General Assembly consciously made that distinction. If you don't withhold and you don't pay, the presumption doesn't apply. It only applies when you're holding that money. If you're holding that money, then you should know you've got it. That's why the presumption would apply. If you're not withholding that money, that presumption is not valid. And I also would submit that we've rebutted the presumption if the court finds that the presumption does apply. We submitted ample evidence to show that the presumption should not result in the court finding a knowing violation. There is all types of evidence that we submitted that we did not know we didn't pay. We, when we did audit, the one time we audited was when we changed vendors from Ceridian to ADP. And it was reasonable to make sure, you've got a new vendor taking over the process, you want to take a look at what they did. They looked at every employee's check stub and they found out that Jeffrey Murray's, for some reason, Jeffrey Murray didn't get a deduction. Within a week, they cut a check, sent it to the state disbursement unit, covered that glitch, and then they double deducted from Jeffrey Murray's next paycheck to pay themselves back for having cut that because he got double paid. If that doesn't indicate that they didn't know it, if they had known about any other of these glitches, they would have paid it immediately, just like they did about the one that they found out about is not at issue in this case. The plaintiff isn't arguing that he's entitled to, she's entitled to recovery of any penalty for that nonpayment because that was covered within the seven day period. Your first argument is that tort immunity applies to this. That is my first argument and that's an argument of first impression, whether or not the penalty applies to a governmental entity under this statute. And it's never been decided by any court. However, I would submit to you that the principle behind it has been decided over and over again, that governments generally are not susceptible to statutory penalties, to punitive damages, to fines, all of these types of assessments that constitute punishment. And the reason is very clear. It punishes the wrong people. Who gets punished when a statutory penalty is assessed against the government? It's the taxpayers. It's not the person who made the mistake. It's not the person who acted inappropriately or willfully and wantonly in a punitive damage situation. It's the taxpayer. In order for that to apply, does it have to be brought under a tort committee? Well, I submit that one of the most misleading terminologies in the statute book is the Tort Immunity Act. The Tort Immunity Act applies to a wide range of types of claims. And it talks about what it applies to. And the Supreme Court dealt with that in the Raintree case, and they dealt with it in the Bloomingdale case, in which they said, this doesn't only apply to torts. It applies to a wide range of claims. You have to carve out why it wouldn't apply. And the court has applied the Tort Immunity Act to statutory claims in many instances. In fact, there's a provision in the Tort Immunity Act, 8-101, that says it applies to statutory claims or claims brought under a statute. So this court, in Paulson v. City of DeKalb, decided exactly that a statutory penalty did not apply to a government. That was the Paulson case that involved when the Nursing Home Care Act had this trouble that it tripled the amount of actual damages as a statutory penalty. In that case, they thought the trouble damages equaled punitive damages. Yes, the trouble damages equaled punitive damages. It called it a statutory penalty. It called it tantamount to a statutory penalty. It was languished along those lines. And found that the legislature didn't specifically say that it applied to governments. And that's the same instance here. And the plaintiff argued, and will likely argue, that the statute applies to governments because it requires governments to withhold. And that is true. But there are many instances of statutes where one part of it applies to governments, but some type of penalty provision won't apply to governments. And the Nursing Home Act is a prime example of that. The standards in the Nursing Home Act apply to governments. Government-owned nursing homes have to comply with the standards. They have civil liability under the statute. But the court found in Paulson that it did not apply to the provision for the statutory penalty. The trouble damages did not apply to governments. If they wanted to make an exception with respect to the Child Support Act, they could have written that into the Tort Immunity Act. They absolutely could have. They could have written it into the Tort Immunity Act. They also could have written it into the Withholding Act. They could have said, this penalty applies to governments. It doesn't use that terminology. When they wrote the threshold provision, which requires the withholding, once you get the withholding order, they specifically applied that to governments. When they wrote the provision regarding penalties, they didn't apply that to the government. They didn't specifically say it applies to governments. It would be contrary to statutory interpretation, and we've cited some Supreme Court cases that hold that, that say that when the legislature wants to apply a statute to a government, it says so. And in this situation, where you're applying something that is by precedent and by all legal principle, not generally applied to governments, you would think that the legislature would have been especially careful in carving out an exception and saying that this penalty applies to governments. So it's a matter of first impression, but we believe, Your Honors, that it is one that there is ample precedent that supports our position that the district is immune. We also submit that the high standard of a knowing nonpayment was not met in this case, that the court basically reduced it to a negligence or strict liability standard. I'll close with one point, and I want to make sure I save enough time to respond, because I assume my time, my 15 minutes, includes my rebuttal to his. No, you'll get it. Oh, okay. Okay, fine. That doesn't mean you have to take more time. No, no, I understand that. I understand that. Two final points. The post-lawsuit argument that they've made, after the district was sued, they went into court immediately and asked the court for a stay of any penalties so they could investigate. It seemed very unusual that this claim could have any substance to it. They wanted to look into why it happened, what happened. Was there some possible collusion between the Murrays here? They didn't really know that, so they got an order entered that stayed the lawsuit. It's our position now, that part of the case was then voluntarily dismissed, but that order that was entered remained in effect, unless it was appealed, and it was not appealed. It was not appealed. And our position is that— If there was collusion, what would the remedy be? If there was collusion, your argument says that the civil liability applies, but punitive damages, or the penalty provisions don't apply. But let's assume for a minute there was an intentional act that these people were in cahoots and said, well, you know, I'm not going to withhold for you because you're my friend. So then the person only gets the $1,000 and nothing else. Maybe what interest, and maybe consequential damages if there are some. You know, if they had to be thrown out of their house because they didn't get their payment or something like that. I mean, what's to keep a government agency from committing these acts? Well, there is all types of things. There is the potential that if there is collusion between the government and some recipient, there are criminal prosecutions that could be brought. There is certainly the public pressure to terminate that employee who's done that something wrong. The plaintiff, of course, has the option of getting the amount that wasn't withheld, that should have been withheld. That statute, we don't deny that. Would that make them whole, though? Well, it should. It should. It would give them the... Now, the question that Justice Burke raises, would there be some argument for consequential damages? Maybe, maybe. The statute doesn't preclude it. That's not an issue here. There was no argument made of any consequential damages. She didn't even realize she didn't get the money. She balanced her checkbook somewhat regularly and didn't miss that money at all. So there certainly was no consequential damages. When your client was aware that these amounts were not withheld and also became aware or recognized that there was going to be no stay recognized by the court, your client paid immediately. Has that ever been reduced to judgment? Whatever, because there were two parts of this lawsuit. One was the penalty and one was, I want my $1,000. Right. There was no judgment entered on the $1,086 that was owed. The only... That was paid voluntarily. That was paid voluntarily. And no interest was sought at that time? No interest was sought. Right. I'll close with one final point. There have been some cases where there have been some very large judgments entered against employers under this statute. And what the court will always say is, we don't have any sympathy because you could have stopped the assessment of this judgment or the growth of this penalty at any time by making the payment. The district was never given that opportunity in this case. They didn't know about it. They weren't in a position like this marriage of Miller case or the Chen case or all these other cases where the employers didn't pay and always had some kind of excuse about why they weren't paying. We didn't know. We didn't pay. We couldn't have stopped this penalty. We had no choice. And that, to me, is a central figure in what the courts look at in assessing and determining whether a penalty should be assessed. Thank you, Mr. DiCiano. You will have time for a rebuttal argument. Thank you. Mr. Sullivan, you may proceed. And this is your chance, of course, to respond. But also, part of your time is for your appellant's argument, cross-appellant. Thank you. I'm pleased to report, Brian Sullivan here on behalf of Jessica Murray, the appellee slash cross-appellant. I'd like to respond to Counsel's arguments in the order that he has raised them. I'm going to take you out of that order. Let's talk about totem immunity first. Why does he have totem immunity? Your Honor, for a number of reasons. If we look at the Withholding Act itself, a payer is defined as any payer of income to an obligor. When we look at income as defined under Section 15, income means any form of periodic payment to an individual, regardless of source, made by state government or any unit of local government, et cetera. Section 35 then governs duties of payer. There is no ambiguity here. Well, wouldn't the same argument have been relevant in Paulson, where whether it's a county-owned nursing home or a nursing home is subject to trouble damages? But the court in Paulson found a way to read those two statutes in concert. Yes, but we turn then to the Tort Immunity Act. And the Tort Immunity Act does not apply under the circumstances. Under these circumstances? Yes. Why is that? If we look at Section 2-102, which provides that notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages. Now, in the Paulson case, the court looked at punitive damages. The court in Chen, this court, distinguished the penalty from punitive damages. It is not subject to the same mercurial nature as punitive damages. We are dealing with a statutory penalty, which is clear, and is in the control of the recipient of the withholding order. Couldn't Paulson have the same argument, though, where it wasn't subject to? In Chen, we talked about whether the due process case is applied, the punitive damages due process case is applied to the statutory penalty. We found they didn't. But we didn't really reach this issue. Though the court did consider the nature of the penalty in relation to the due process argument, the court also must consider that this is not an action based upon an injury. This is an action for a statutory penalty, and the penalty is clearly articulated on the withholding order. Now, relative to the Tort Immunity Act, we are not dealing with a tort. Does that matter? Based on Raintree, does it matter that you're not dealing with a tort? In dealing with a claim for injury, we may consider a broader net to the Tort Immunity Act. But we are not dealing with a claim seeking damages on an injury here. We are dealing with a claim seeking a statutory penalty. If we read further into the Tort Immunity Act- What about the Village of Bloomingdale? Village of Bloomingdale? I'm sorry, Your Honor? Bloomingdale, I'm sorry. It was that quasi-contract, wasn't it? There were two counts that were found to be- they were counterclaims found to be subject to tort immunity. The court views these as torts. Now, in dealing with the quasi-contract claim, the court relied on two distinct immunities. Section 2-101 does not create an immunity itself. We look further in the Tort Immunity Act for the express immunities and then look toward those caveats which are set forth under 2-101. Now, in Village of Bloomingdale, the court considered the immunities under Section 2-104 and Section 2-106. These immunities were held in place and the court was not going to add additional language relative to a long-time conduct here. Now, in looking at the Tort Immunity Act in relation to the present claim, we may very well turn to Section 2-109, which provides a local public entity is not liable for an injury. But again, we are not dealing with a tort. We're not seeking damages associated with an injury. There is no injury to the petitioning party directly related to the penalty. Our legislature has structured the law in such a way to set policy, and that policy  is to protect taxpayers. I mean, we have a separate policy that's at odds with what you're arguing, and that is under the Tort Immunity Act to protect taxpayers from paying $400,000 for failure to make a few payments. That's a lot of money. Yes, I understand. But for a small conservation district, a county conservation district, how many employees are at this place? Offhand, I cannot speak to that issue. It doesn't sound too big to me. Maybe it's huge, but it doesn't sound too big. $400,000 is a lot of money. Well, especially under circumstances where it may not even have been knowing. That may have been inadvertent. Well, that is another issue that I would like to attend to once we have the result. I don't mean to have you not answer Justice Burke's question regarding the other policy. With reference to public policy, the Tort Immunity Act is not designed to negate the liability of the government on the whole. It creates exceptions to liability. We are dealing with a statutory penalty, which the legislature had sought fit to apply to payors. Now, under the very definition of the Withholding Act, payer includes MCCD. With MCCD, my understanding has operating expenses in excess of $7 million per year. Now, this is not a small operation. And the individual impact on MCCD is certainly not relevant to the tort immunity questions. It may be relevant to the due process argument, which was raised in the appellant's reply and response to the counter appeal. Now, when we look at the policies on a competing basis, we have a government which is a major employer. Among those employees, we have multitudes of families who rely on child support. The government certainly should be subject to this penalty to ensure that these families are taken care of. Otherwise, the incentive to monitor child support would not be in place in relation to governmental entities. Well, let's assume, let's go where Judge Zinoc was going, and let's assume for a moment, regardless of the fact that I don't think he would deny that Section 35 of the Withholding Act is punitive, correct? I do not agree that it is punitive. Again, when we look at the Chen decision, the Second District has made it clear, it's not punitive damages. It is a penalty. So it is certainly... So isn't that what 2102 of the Tort Immunity Act prevents, is the punitive against the government? I mean, doesn't it say, notwithstanding any other provision of law? It does, but it is to pay punitive damages. We are not dealing with punitive damages here. We are dealing with a statutory penalty. This is not an action for an injury in relation to those damages. So we have to view these as distinct issues, and ultimately, the recipient of the withholding is in control of that penalty. Okay, so then let's assume that you're correct. Now let's go to where Justice Zinoc was, knowingly. Yes, and that also dovetails with the immunity, because you still have a standard and a threshold that must be met, even as it relates to governmental employees. Now, in this case, we have two issues that I must attend to. The first is a presumption, but my position is that regardless of the presumption, if this court were to find that the presumption did not apply based upon a strict construction of the statute, there is more than ample facts and evidence at the trial court to find that this was a knowing failure. Now... What are those facts? First of all, there is no question that the withholding order was served. It was received in May 2004. NCCD knew that it had an obligation to withhold. It knew of the penalty. There is no question of those facts. Now, five payments were missed through the end of 2009. Over a six-year period. Well, the payments were not initially met. Payments were being made up until August of 2007, and then we started running into this problem. Now, from August 2007 through the end of 2009, we had five missed payments. But they really came in a month where there were three payments due, right? I mean, it wasn't... It kind of showed that there was some sort of glitch, perhaps on a computer, where the third one wasn't picked up? I don't believe that the glitch has been demonstrated at the trial level. There certainly were payments made on the third paycheck throughout this time period. And just because these happened to be third paychecks of the month, that reflects lack of monitoring. There was a head-in-the-sand approach to delegation of withholding duties. Now... At that point, whoever brought it to their attention? Well, with reference to these immediate five, they claimed to not have realized this until having received the underlying complaint, which was initially filed as an L.A. case. So at the time that these five withholding... These five child support payments were withheld and not paid, at that point, did your client, ex-wife, the mother, notify them that she wasn't getting payments? My client didn't realize that she hadn't received the payments. So if she didn't realize, she, the person who was getting the monies into her account and living on them, if she didn't realize it, would it be a stretch to think they didn't realize it? It is their obligation to monitor this. If we look at... But again, I go back to the word knowingly. Yes, and that brings me to my next point. In January of 2010, Ceridian had previously been monitoring and had been the agent responsible for the withholding. In January 2010, MCCD had changed agents, and ADP became the agent. And as indicated on the affidavit of Ms. Abramadisias, an employee for MCCD, it was discovered internally upon an audit of ADP that the payment of January 15th of 2010, which is not subject to this action, had been missed. They caught that, and yet they didn't even look back one month to catch the nonpayment from December of 2009. Well, the purpose of their audit was, we're switching over, and we're going to make sure that these folks are doing it correctly. Yes, but... So why would they say, oh, these new folks are doing it incorrectly, therefore the old folks must have also been doing it incorrectly? I mean, is that a logical premise? They certainly saw the benefit of an audit, and over the course of... So then, okay, then they audited. Let's say they audited it then, but then they would have not had to pay the penalties from that day up until when they had to pay them. But from that day back, they still would have been subject to hundreds of thousands of dollars of penalties for those five mispayments. Correct? Correct. I mean, if they would have caught it, then you would have found out about it and filed a lawsuit. Yes, because they failed an ongoing obligation to monitor. Now... It gets down to brass tacks. Is that a knowing act, or is that a negligent act? And if it's a negligent act, don't we fall into Thomas and Donahue and some of these other cases that say the act was not intended to penalize to great extent people for their negligence, but for knowing acts, basically saying, you know what, I know this poor woman needs this child support, and I'm not going to give it to her. I'm either going to keep it for myself and use it for my own benefit, or I'm going to give it to my employee because I like them and I want him to have the money. No, because if we look at Donahue, you had a situation where a paycheck was lost on a desk. In dealing with the questions at play here, you have an ongoing obligation to see to it that this is administered appropriately. The mere fact that a period of three years, there was absolutely no monitoring... How would you submit they monitored? How many employees did they have, by the way? Well, again, I am uncertain as to the number of employees for MCCD. However, if we look at the affidavit of Ms. Abramovicius, she acknowledges that all the information for payroll was being downloaded. It was readily accessible to her in a payroll register file. This was available in her office. This was available for cursory monitoring. Didn't they outsource all of this? I mean, wasn't it outsourced? They outsourced the withholding. However, the agent was downloading the file for their own internal payroll. And internally, she had access to all of this information and certainly had an obligation under the Withholding Act to see to it that the withholding order was followed and administered appropriately. Again, the knowing question should not fall into the head in the sand approach to administering withholding orders. In structuring the law in such a way to provide for the intent of the penalty, we must consider knowing in connection with that policy. Now, the legislature has been very clear for the purposes of the penalty. And then our courts have considered this question. There is the knowledge of the underlying penalty and the knowledge of the duty to withhold, which is clearly conveyed in the withholding order itself. Now we have an ongoing obligation to see to it that this is taken care of. Merely delegating that and then forgetting about it as though this withholding order does not create duties in the recipient certainly would rise to the level of knowing. This is not a negligence that the court should countenance as constituting negligence and thus avoiding a statutory penalty. Now there's a duty on the recipient. Yes, and I understand that. I mean, so maybe the legislature is presumed to read the cases and change the law at court with the cases. And maybe the legislature is saying, we're having some pretty hefty penalties here based on situations such as this where the recipient either sits on it knowingly or just doesn't realize they're not getting it as your client and then doesn't do anything for years and then all of a sudden comes up with a big windfall. I understand that the statute has been amended and that is certainly a question on the cross appeal, which I want to get to because I don't, you know, I think we'll give you a couple of minutes to address your cross appeal. We don't want to forget about that. So yes, so we should probably be saying right now, why don't you take a couple of minutes to give us a brief summation on your cross? The confound in this case in the divorce action was filed in August of 2010. Two years later, in August, August 18th, 2012, the amended withholding order provisions regarding the penalty were implemented and in October of 2012, a judgment was entered. The court applied the penalty cap relative to these five instances, capping each at $10,000 under the new statute. However, the court erred in this when we review recent Illinois Supreme Court decisions concerning retroactivity and prospectivity, we, we start with the Commonwealth Edison case when the court adopted the land grab approach, the court adopted a two-step analysis, which had been adopted by the U S Supreme Court. The first step is whether the legislature has clearly indicated the temporal reach. This is yes, section four of the statute supplies. Let me ask you this. So you have a statute that has two parts. You're arguing, I mean, the trial court found one part was not retroactive and one part was retroactive. Is that improper? Yes. If you look at the Yacoubini's decision, this is the first district 2006 decision, you're dealing with prospectivity as well as retroactivity. When there's procedural and substantive changes, the court is to apply prospectively only. Now, even stepping back from that, though, if we look at this, the statute on statute section four, it's quite clear. The court is to apply the penalty provision only prospectively. So I'm not even sure that we arrive at the secondary question relative to piecemeal application of retroactive and prospective substantive and procedural changes. Now, in the event that we do in fact get beyond section four, then of course we have to resolve these questions. But section four provides no new law shall be construed to repeal a form of law as to any penalty or in any way whatever to affect any penalty or claim arising before the new law takes effect. Now, without question, we have mitigation pending for two years. This is a cause of action arising before the statutory modification in August of 2012, and it applies to a statutory penalty. I believe that section four ends the analysis. But even if we get beyond section four, we must look at how the court apply the statutory amendments. And in resolving this question, we look at what the amendments were. The court did not apply the one-year statute of limitations. The court did not apply this obligation to provide a letter notifying of the failure to withhold and allow a 14-day window for the employer to bring that current. That would have clearly affected your client's substantive rights to apply that retroactively. Absolutely. But the question for procedural and substantive, we have to look at this in connection of the post-cabinet case law. We can't simply fall back into the pre-cabinet questions under retroactive impact and substantive rights. Cabinet shifted the analysis. Post-cabinet, we looked at section four. It's inappropriate for us to go back to the pre-cabinet cases when the analysis was different and we looked at vested rights and whether or not there's a vested right relative to a statutory penalty. That doesn't even enter the equation, though. When we're looking at application of section four, we first start with the express language of section four. And it is quite clear that it would apply to a statutory penalty. Now, as far as looking at the piecemeal questions of application of the statute, under the Yacoub decision, I apologize for my pronunciation, the court declined to adopt a piecemeal application in looking at procedural and substantive changes. Now, the penalty at play in this case certainly is a substantive change. So we must maintain the distinction now between a substantive right, a vested right, and a In looking at the procedure as adopted in the statutory amendment, none of that was dealt with relative to these new obligations that are set forth on the obligee in a child support setting relative to a withholding act penalty. Now, if we treat a basic concept of procedure here, the penalty certainly is not procedural. So we must first start with an eye toward what constitutes a procedural change. It's merely because something is not reflecting a vested right or substantive in that regard doesn't, by default, make it procedural. So, even if this court views the change to the statute regarding the cap on the penalty as procedural, we still run into this problem that the trial court applied only that portion of the amendment. Okay. I mean, I'm going to cut you off there and we're going to, you will have time for rebuttal argument on this, on this point. Okay. Thank you. Counsel, Mr. DeSantis, you may, your rebuttal argument is to the case in chief and then your response regarding the cross-examination. Thank you. Regarding my rebuttal on the at-pull-out argument that we made, I want to address a few points specifically. Counsel talks about the Chen case. When I first addressed you, I said that you were looking at a case of first impression regarding whether or not the Tort Immunity Act, whether these penalties in general apply to the district based either on the Tort Immunity Act or just a silence in the language of the statute. And counsels argued that, well, it's not a question of first impression because Chen decided it, but Chen did not decide it. The question before Chen wasn't whether or not a statutory penalty can apply to a government. The question in that case was whether the U.S. Supreme Court's due process analysis for punitive damages applies to the statutory penalty under the act. And the court found that it didn't. And the reason the court found that it didn't was because the major factor in that punitive damages analysis is the mercurialness of punitive damages. There's no standard to apply. Depends on how badly the jury thinks about the defendant as to what the damages are. And the court wants to look at, there must be some application of some standards to it, you know, reprehensibility in comparison to other types of things. And the court in Chen said those factors aren't applicable here. The statute is very clear on the amount of the penalty and when it's applied and all of that. So they're not going to apply that punitive damages analysis. That's not the issue before the court. The problem with applying a penalty to the government, whether it's punitive damages or a statutory penalty or this one under this act, isn't mercurialness. I mean, it could be mercurialness, but it's not specifically the standardless application of it and how that can produce uneven results. The problem with applying penalties and punitive damages to governments is that it punishes the wrong person. It is not the purpose of punitive damages or penalties. The purpose is to deter bad conduct and to punish the person who engages in the bad conduct. When punitive damages or statutory penalties are assessed against the government, it punishes you and me who had nothing to do with anything that was done wrong. It punishes the taxpayer. It punishes the school districts. It punishes the users of the district. It punishes those people who get their tax bills twice a year. If we find that tort of the community applies and that that is punitive and 2102 applies not to 35 of the Wage Act, do we ever get to the issue concerning the penalties imposed by Judge Zott with respect to the new code? The amendment? Well, no, you would not get to it. Because if the district is immune from statutory penalties, then the judgment in favor of the plaintiff for any penalties has to be reversed because the district's immune. So the question of the applicability of the amendment is not going to come into play. Regarding the other argument, two other arguments they made, this is still on the rebuttal part, they keep talking about the obligation to monitor and they're conflating this with the same thing as knowledge. And knowledge is a completely different standard from some obligation to monitor. They keep talking about the district took a head in the sand approach. But remember what the head in the sand approach, the ostrich argument is. The ostrich argument generally is where you have either an employer or a supervisor or somebody who knows somebody's doing something wrong and doesn't want to pay attention to it. I didn't have that. So I took my head in the sand, the ostrich approach. But there has to be some basic knowledge that this supervisor or this employer knows that something is going wrong. You don't have that here. That's not what, if that was the case, then we'd have a different case. But that's not what's going on here. What about the fact, excuse me, that counsel mentioned that at the district, they're the ones who entered the information into the computer with regard to the withholding. So they should have known because they actually had that information there. Well, should have known is different from knowingly. Should have known is a negligent standard. And the courts have said that is not the standard to apply. Knowingly is a, as we learned in law school, you know, we've got intent, knowledge, negligence, trip liability. And this is, this is not, should have known is not the standard. Now they keep bringing up the affidavit of Ann Abramovich, as we call her Ann A, just to make it easier. But first of all, I want to say, and I'm not, I don't have any concern about the substance of the affidavit, but the affidavit is not part of the record because the only reason we submitted that was from the summary judgment part of the case. And it was done to establish the computer generated records, the foundation for it to establish the business records exception to the hearsay rule. That's the only reason that's in the record. But I'll deal with the substance of it because it doesn't say anything more than if the district had gone in and pulled up these records after every paycheck. Yes, they could have found that the deduction wasn't made. They could have found it as they did when ADP took over. They went and they looked at the pay stubs. They could have gone and looked at the pay stubs, but that doesn't mean they have knowledge of it. It means that they could have, but they've got, you've asked the question about how many employees. They've got 80 employees. Okay. So they don't go in and look at every employee's pay stub every week in order to make sure that all the deductions and withholdings were done properly. They don't do that. And that's why they hire a well-known and national company that does this for me and maybe for you, maybe for a lot of different employers. These companies are good at what they do. And it worked 160 times in this case, only five times it didn't over six years. We don't know why, but it was some glitch, some glitch in the system. What about the trial court applying the statute, part of it retroactively and part of it not? Well, there's never been a case. I mean, the law is the law and it becomes the law when it becomes the law. The statute said, this amendment said it became the law when it became effective. And that's when the governor signed it. And that was in August of 2012. So the entire law applies. Now there may be parts of a law that cannot be applied to a, to a pending case. Why? Because it would impair substantive rights. And, and then we didn't ask the circuit court to apply the statute limitations or the notice for requirement or any of that. We didn't ask them to do that because those events would have already taken place. And I would see a constitutional problem with asking the court to apply those. But the judgment hasn't taken place yet. The judgment is, and there is case after case that says that when a remedy is changed in the course of a lawsuit, that's a procedural change and that is applied to the judgment as long as judgment has been entered in. And had the judgment been entered already, yes, that would have been become vested and they couldn't have applied it, but it hadn't been entered yet. Has it, has it been entered now? The judgment on the initial amount that wasn't paid? No, there was never a judgment entered on that. No, no, I don't believe there was a judgment entered on that. The only judgment was entered on the, on the penalty. Yeah. And that was after the amendment took effect. Counsel's argument, you know, about a cabinet changing the law and a land graph and all of that. It doesn't matter what test we apply here. The outcome is the same. It doesn't matter. We can talk about the legislative intent or vested rights approach, the procedural substantive approach, the statute on statutes. They all produce the same result. The, the intent of the legislature was that this became effective in August of 2012 when the governor signed it. That judgment was entered afterward. There's nothing in the statute that indicates any contrary intent as to when that statute becomes applicable. The entire, now if you want to look at the entire statute to determine its purpose, that entire statute was meant to ameliorate some of the harsh effects of this, of this, of this withholding act. Everything it did, it softened some of the impact of it, as Justice Burke said, because of some of the outcomes that, that the cases show. So if anything, the legislature did not intend that the remedy provision, which it would not be precluded from being applied immediately based on any other type of constitutional provision, there's nothing in the statute to suggest that the legislature didn't want that intent applied immediately. The vested rights approach, you know, the vested rights approach approach is still a part of the analysis. It's not the entire analysis. Counsel's correct about that. But under Landgraf and Commonwealth Edison, it still is applied. It's still something the court looks at. There were no vested rights affected by the application of the, of the amendment to the judgment in this case, to the, to the penalty judgment. Counsel says that the, that the penalty, the penalty is not procedural. Well, I, I, I absolutely disagree with that. And there, we have a Supreme Court case and the Dardeen case and the White case entered by this court that specifically said that a penalty is procedural. It's remedy. That's procedural. We're going to get you over your time. That'll cut you off there. And we will hear a rebuttal argument on the cross appeal. Thank you. Thank you. Counsel, I would rebuttal if you could start off with the fact that the cases seem to be replete that before judgment enters, if an amendment relates to remedy, it's applied. I mean, if a statute relates to remedy, it's, it's applied. Your Honor, the statute is not indicating a temporal reach. If we look at Foster Wheeler Energy Corp, second district case, it specifically provides statutes that merely provide the air to take effect upon becoming law, do not contain clear expression of legislative intent that are to be applied. We do not have any expression of temporal reach in this statute merely because it's to become effective in August of 2012. The position that the absence of language indicating temporal reach or the inclusion of language that it will become effective upon becoming law is tantamount to a presumption in favor of retroactivity. It is not the law of Illinois. We first look to whether or not there is a temporal reach expressly stated, and our law provides that there is not. So then we, again, are directed under Cavan to section four, the general savings clause, which provides the temporal reach. And this case was pending when the statutory amendment was made. The legislature passed this statute post Cavan. Absent that language, the legislature knows that we apply section four of the statute on statutes, and as previously stated, the statute on statutes is quite clear that you do not, in relation to a penalty, apply this retroactively. Now, we can't fall back pre-Cavan in our analysis here. In treating Cavan, if it relates to a penalty, in every instance, it's not applied retroactively. I mean, those cases normally come out where the penalty is increased, not decreased. You know, we have penalty and we have remedy. What is this? Is this a penalty or is this a remedy? And this is a decrease in the penalty. Yes, this is a penalty. As previously stated, this is not an action for injury. This is not an action for damages associated with an injury. This is an action for a penalty. Now, in criminal law, the defendant would be able to pick which one he wished to be saying people would pick to be sentenced under the lesser penalty. But you're saying the law mandates that the greater penalty apply in this instance. We have an action that was pending for two years. Ms. Murray is the party that's adversely affected here by the change in the law. In the criminal setting, we may have a party who is a defendant and is adversely impacted by the change in the law. Of course, that criminal defendant is going to elect the lesser sentence. That is not the situation here. We have an individual who has litigated for two years and two months prior to judgment, the statute has changed. Ms. Murray is a mother who did not receive child support as required. And actually, for a period of six months after this case was litigated, she continued not to receive the child support. And it is quite clear that despite the writing on the wall, MCCD still failed to tender the child support appropriately, apparently out of some concern that this would be viewed as an admission. But again, MCCD had access to all the payroll. Throughout this whole litigation, they could readily confirm a nonpayment. And yet, no payments were forwarded during the first six months of this case to the state disbursement unit. Instead, we had a runaround with a motion for stay in the L.A. case, despite the lack of statutory authority relative to a stay. And then again, in the divorce case, after the voluntary dismissal of the L.A. case, there was a period from August 2007 all the way through February of 2011 when Ms. Murray did not receive the child support that she was due. This is the precise situation that our statute is seeking to allay. We would like to thank the attorneys for their arguments in this case. The case will be taken under advisement with a decision on it in due course. Thank you.  Appreciate it.